Considered by TRAMMELL, MURDOCK, and SIEFKIN.

------

JAMES H. CHANNON MANUFACTURING CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 6803.     Promulgated October 24, 1927.

1. Value of assets for invested capital and depreciation purposes determined.

2. Where petitioner fails to adduce proper evidence in support of its contention that items capitalized within the taxable year should be charged to expense the deduction must be disallowed.

*Lee I. Park, Esq.,* for the petitioner.
*A. George Bouchard, Esq.,* for the respondent.

This is a proceeding for the redetermination of a deficiency in income and profits taxes for the calendar year 1917 in the amount of $17,206.40. The errors urged by the petitioner are:

1. Refusal of the respondent to allow any greater value than $47,339.19 for invested capital and depreciation purposes.

2. Failure of the respondent to allow as a deduction the amount of $1,789.36 representing the cost of certain items erroneously capitalized.

### FINDINGS OF FACT.

Petitioner was organized and incorporated under the laws of the State of Illinois January 24, 1917, for the purpose of engaging in the manufacture and sale of elevators, derricks, machinery of all kinds, tools and appliances, etc. The authorized capital stock of the petitioner was $100,000, divided into 1,000 shares of $100 par value.

Coincidentally with the organization of the petitioner, Norvin Nussbaumer, Emil J. Hoag and Donald L. Morrill were appointed as commissioners pursuant to the laws of the State of Illinois to appraise the assets of the Union Elevator Machine Co. (hereafter referred to as the Elevator Company), which appraisal was made

and embodied in a report to the Secretary of the State of Illinois. The amounts of said appraisal are set forth in the minutes of the board of directors of the petitioner at a meeting held on January 22, 1917, held for the purpose of considering the offer of James H. Channon to sell to the petitioner the assets of the Elevator Company of which he was owner of all the capital stock. The pertinent excerpts from the minutes of that meeting are:

I hereby offer to sell, assign and transfer to this company, in full payment for my subscription to the capital stock thereof, all of the personal property formerly belonging to the Union Elevator & Machine Company of which I am the sole owner, all of which is more fully shown by the inventory of said personal property dated December 31, 1916, a copy of which shall be filed with the Treasurer of this Company; also, all of the personal property acquired by said Union Elevator & Machine Company since the date of said inventory; and I further agree to pay into the treasury of this company, as needed, not less than Four Thousand Eight Hundred Dollars ($4,800.00) in cash as a working capital.

After a full consideration of the proposition, and it appearing that the commissioners herein have appraised said property, as follows:

| | |
|---|---:|
| Blue prints, printed matters and electros | $3,778.95 |
| Machinery and tools | 28,320.36 |
| Patterns, shop rights, licenses and patents | 29,366.16 |
| Stock on hand | 25,560.82 |
| Shop and office fixtures | 2,421.40 |
| Automobile | 400.00 |
| Accounts receivable | 5,152.31 |
| | 95,000.00 |

It was unanimously voted that Mr. Channon's proposition be accepted, and that the President and Secretary be authorized to issue to him certificates for 998 shares of stock upon the delivery by him of the personal property specified in said inventory and in the foregoing proposition.

Nussbaumer and Hoag, two of the commissioners who appraised the assets of the Elevator Company, had been connected with that company for a great number of years, Nussbaumer having been time-keeper, cost clerk, salesman and general manager and secretary, and Hoag having had charge of patterns and castings and later having been made foreman. Both were acquainted with the costs of machinery and equipment, and Hoag was particularly acquainted with the costs of patterns.

In making the appraisal hereinabove referred to, the material on hand was valued at cost or market, whichever was lower; machinery was valued at what it could be replaced for at the time in its then condition; accounts receivable were taken from the accounts receivable ledger. A detailed inventory was not taken of patterns, shop rights, licenses and patents—they were grouped together and figured as low as possible.

The closing balance sheet of the Elevator Company at December 31, 1916, was as follows:

### ASSETS

| | |
|---|---:|
| Cash | $3,161.90 |
| Accounts receivable | 16,534.39 |
| Merchandise inventory | 25,560.82 |
| Patterns | 6,484.29 |
| Furniture and fixtures | 2,594.37 |
| Tools | 13,966.91 |
| Auto | 375.00 |
| Total | 68,677.68 |

### LIABILITIES

| | |
|---|---:|
| Notes payable | $11,000.00 |
| Accounts payable | 10,338.49 |
| Capital stock | 15,000.00 |
| Surplus | 32,339.19 |
| Total | 68,677.68 |

The opening balance sheet of the petitioner, giving effect to this sale, is as follows:

### ASSETS

| | |
|---|---:|
| Cash | $3,161.90 |
| Accounts receivable | 16,534.39 |
| Merchandise inventory | 25,560.82 |
| Printed matter | 518.45 |
| Automobile | 400.00 |
| Blue prints | 1,975.00 |
| Cuts | 1,285.50 |
| Tools, machinery and equipment | 28,320.36 |
| Furniture and fixtures | 2,421.40 |
| Patterns | 20,000.00 |
| Good Will | 21,160.67 |
| Total | 121,338.49 |

### LIABILITIES

| | |
|---|---:|
| Notes payable | $11,000.00 |
| Accounts payable | 10,338.49 |
| Capital stock | 100,000.00 |
| Total | 121,338.49 |

The large increase in the pattern account of the petitioner over the figure shown in the closing balance sheet of the Elevator Company is accounted for by the fact that that company had charged a number of patterns to profit and loss account or to special jobs, which patterns, however, were still in use.

The petitioner had its machinery and equipment appraised for income-tax purposes in 1922 by a consulting engineer as of January 1, 1917. A summary of the figures arrived at by that appraiser is as follows:

*Summary, January 1, 1917*

|  | Replace-ment cost | Accrued deprecia-tion | Net value |
|---|---|---|---|
| Machinery | $42,882.84 | $16,365.93 | $26,516.91 |
| Tools | 4,827.82 | 2,269.08 | 2,558.74 |
| Dies | 7,157.30 | 2,982.21 | 4,175.09 |
| Electrical equipment | 1,095.00 | 514.65 | 580.35 |
| Shop equipment | 2,010.05 | 944.72 | 1,065.33 |
| Transmission | 1,581.10 | 743.12 | 837.98 |
| Patterns | 94,730.08 | 39,470.86 | 55,259.22 |
| Office furniture and fixtures | 1,281.84 | 672.14 | 609.70 |
| Automobile | 665.00 | 166.25 | 498.75 |
|  | 156,231.03 | 64,128.96 | 92,102.07 |

In arriving at the above figures the appraiser listed all of the machinery and equipment in the plant in his appraisal report in 1922, and added thereto assets which were sold, and deducted assets which were purchased between the period January 1917 to 1922. He then determined the current prices of new machinery as of January 1917, and computed the cost of reproduction at that time, and deducted therefrom depreciation from the date of acquisition, where such dates could be determined—where they could not be ascertained he determined the condition of the machine and estimated the number of years in use.

The assets acquired by the petitioner for stock at the time of its organization in January, 1917, have been valued by the respondent for invested capital and depreciation purposes at $47,339.19, which represents the sum of the capital stock and surplus shown on the closing balance sheet of the Elevator Company of December 31, 1916.

### OPINION.

MORRIS: The first assignment of error urged by the petitioner is refusal of the respondent to allow any greater value than $47,339.19 for invested capital and depreciation purposes in the taxable year 1917. The petitioner contends that its assets had a value at the date of acquisition for invested capital and depreciation purposes equal to the par value of the stock issued therefor.

The facts are that Norvin Nussbaumer, E. J. Hoag, and Donald Morrill organized the petitioning corporation in January, 1917, to engage in substantially the same business as that theretofore engaged in by the Elevator Company, at which time James H. Channon, owner of all of the capital stock of the said Elevator Company, offered to sell the assets of that company to the petitioner for 998 shares of capital stock of the petitioner, which offer was duly accepted and the sale was so consummated. At or about the same time, Nussbaumer, Hoag, and Morrill, proceeding under the laws of the

State of Illinois, appraised the assets of the Elevator Company at a figure of $95,000.

Hoag and Morrill appeared personally at the taking of depositions in this case and testified at length as to their services with the petitioner and its predecessor and the nature of their experience therewith, which experience, in our opinion, qualified them to place a value on these assets. They testified that the inventory of materials was taken by actual count and that the cost or market, whichever was lower, was used; that the machinery was priced at what it would bring second hand; that the patterns were lumped and priced as a lot. The testimony disclosed that it was the practice of the petitioner's predecessor to charge a number of patterns to its profit and loss account and to special jobs which accounts for the considerable increase in the value of patterns placed upon the petitioner's books.

In 1922, petitioner employed a consulting engineer to make an appraisal of its assets as of January, 1917, when the sale here in question took place, which appraisal was made and a lengthy detailed report rendered thereon. This appraiser appeared personally at the taking of depositions in this case and he testified at great length as to his qualifications to make such an appraisal. He testified that he took all of the assets in the plant by actual count and listed them and that he deducted therefrom the purchases and added thereto the sales as shown by the books of account between the period January, 1917, to the time of making his appraisal in 1922. He then determined the current market price of similar machinery and equipment and applied depreciation on each item for the period of time it had been in use, thereby arriving at the cost of reproduction in January, 1917, of $92,102.07, which figure greatly exceeds the values placed on machinery and equipment by Nussbaumer and Hoag at the time of the organization of the petitioner.

This witness further testified that a committee was appointed consisting of Hoag and Nussbaumer at the time of making his appraisal in 1922 and that they took each pattern separately, examined it carefully, if it was metal they weighed it and if it was wood they calculated the amount of material, etc., entering into the cost thereof and in this manner determined the cost of each pattern.

We are not called upon to accept the testimony of witnesses, Nussbaumer and Hoag, as conclusively establishing the cash value of these assets at January, 1917, nor are we asked to accept an appraisal report made by a disinterested appraiser in 1922 to substantiate these values. We have the combined testimony of the witnesses who made the appraisal in 1917 and the witness who made the appraisal in 1922 which we believe satisfactorily establishes the value contended

for by the petitioner. We, therefore, hold that the assets, exclusive of any good will which may have existed, received by the petitioner in 1917 in exchange for stock had a cash value equal to the par value of the stock issued therefor, and that those values should be used for invested capital and depreciation purposes.

The assets in question having been sold and transferred prior to March 3, 1917, the provisions of section 208 of the Revenue Act of 1917 are not applicable. *Appeal of Henderson Overland Co.*, 4 B. T. A. 1088.

The second assignment of error relates to certain items of expense, amounting to $1,789.36, alleged by the petitioner to have been capitalized in 1917 in error. A detailed list of these expenditures was made a part of the petition filed with the Board. At the time of taking depositions in this case, counsel for the petitioner did not have the original list of these items and realizing that exhibits attached to the petition are not evidence before the Board until offered as such, he attempted to stipulate with respondent's counsel that the list filed with the petition be accepted in evidence, which respondent's counsel did not do. After some discussion on the subject, respondent's counsel agreed that if the original was attached to the petition and was properly admissible, he would not object on the ground that it was not properly identified. He further said, however—

If I care to make any objection to the merits at the time you offer it [meaning at the time of the hearing] I reserve the right to do so, but not because it isn't properly identified.

This detailed list was not offered in evidence at the time of the hearing, consequently counsel for the respondent was not afforded the privilege of cross-examination nor an opportunity to object to the merits of this issue. We are, therefore, of the opinion that this issue has not been properly evidenced and that we can not, therefore, allow the sum of $1,789.36 as a deduction.

*Judgment will be entered on 15 days' notice, under Rule 50.*

Considered by TRAMMELL, MURDOCK, and SIEFKIN.